# IN THE COURT OF APPEALS OF IOWA

No. 20-1525
Filed April 13, 2022

**DANIEL J. LUND and SUSAN M. LUND,**
    Plaintiffs-Appellees.

**vs.**

**BRIAN L. SIEGERT and PAULA M. WAGNER,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Pottawattamie County, Amy Zacharias, Judge.

Brian Siegert and Paula Wagner appeal the district court's ruling on Daniel and Susan Lund's petition to establish a boundary by acquiescence. **AFFIRMED.**

Kyle J. McGinn of McGinn, Springer & Noethe, P.L.C., Council Bluffs, for appellants.

William Bracker, Council Bluffs, for appellees.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**MAY, Judge.**

This is a dispute between landowners over the boundary between their adjoining properties. The district court found Daniel Lund and Susan Lund (the Lunds) had established a boundary by acquiescence under Iowa Code section 650.14 (2019). Their neighbors—Brian Siegert and Paula Wagner (the Siegerts)[1]—appealed. We affirm.

**I. Introduction & Background Facts**

In 2018, the Lunds purchased property in rural Council Bluffs, Iowa (Lund property). This land abutted a parcel to the north (Siegert property) that was owned by the Siegerts. The two parcels appear to meet at a fence line. But a 1997 survey revealed the fence line is actually about twenty feet north of the recorded boundary line—on the Siegerts' land. This case centers on that roughly twenty-foot-wide strip of land between the fence and the surveyed boundary.

No one is sure when the fence was built or by whom. Aerial photos show what appears to be the fence line from at least 1938 onward. The fence is old enough that portions of it have deteriorated and become a "brush line," with trees and shrubbery growing forming a semi-natural boundary.

At trial, the parties presented conflicting evidence about the extent to which the fence line was treated as an actual boundary. And much of the evidence about the disputed land's use was introduced through previous owners of the competing parcels. Susan's parents—Gary Haldeman and Catherine Haldeman (the Haldemans)—first purchased the Lund property in 2003. They believed the fence

---

[1] In the caption of this case, Paula's last name is listed as Wagner. But in the body of their brief, she is named Paula Siegert.

line was the true boundary. And they used the disputed land for driveway access to their property as well as go-kart riding. The Haldemans also maintained the area by keeping it mowed. Gary testified that he never saw the owner of the Siegert's property—or anyone else—mow the disputed property or otherwise use it except for periodic driveway access to the adjoining field. "I mean it would have been like a stranger mowing our yard," he explained, "and I don't recall that ever happening." Finally, Gary explained that he was never approached about his family's use of the disputed land until at least 2014.

The Siegerts presented a markedly different story. Before the Siegerts purchased their property in 2015, it had been owned by Don Feekin since 1998. And Feekin testified that, to his understanding, the disputed land was always part of the Siegert property. Feekin also testified that the Haldemans knew where the surveyed boundary line was because he had told them about it and, moreover, it was sometimes marked with flags. Feekin also claimed that he frequently used the disputed land as an access road. And he claimed he maintained the area by mowing and spraying for weeds periodically. According to Feekin, the Haldemans only mowed and maintained about half of the disputed land, maybe five or ten feet of the twenty-foot-wide strip. Finally, Feekin claimed to have used the disputed parcel to excavate soil periodically while he owned the land.

After hearing and considering all of the evidence, the district court found that the parties and their predecessors had treated the fence line as the property boundary since at least 2003. So the court established title to the disputed land in the Lunds. The Siegerts appealed.

**II. Standard of Review**

An action to establish a boundary by acquiescence "is considered on appeal as an ordinary action. The district court's judgment has the effect of a jury verdict, and on appeal the only inquiry is whether the findings are supported by substantial evidence." *Egli v. Troy*, 602 N.W.2d 329, 332 (Iowa 1999) (internal citation omitted).[2] "[E]vidence is substantial if 'reasonable minds would accept the evidence as adequate to reach the same findings.'" *Zaw v. Birusingh*, No. 20-0697, 2021 WL 5458049, at *12 (Iowa Ct. App. Nov. 23, 2021) (citation omitted). As an appellate court, "it is not our province to solve disputed fact questions nor pass on the credibility of the witnesses." *Concannon v. Blackman*, 6 N.W.2d 116, 118 (Iowa 1942).

**III. Discussion**

Our boundary by acquiescence doctrine is statutory. Iowa Code section 650.14 provides: "If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such boundaries and corners shall be permanently established." Put another way, "[w]hen the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed." *Egli*, 602 N.W.2d at 333 (quoting *Ollinger v. Bennett*, 562 N.W.2d 167, 170 (Iowa 1997)). While both parties involved must have knowledge of the claimed boundary

---

[2] Although we have sometimes engaged in de novo review when the parties agree the case was tried in equity, we see no such agreement here. In any event, based on our review of the record as a whole, we conclude that even if de novo review were appropriate, we would reach the same conclusion as the district court.

line, "[a]cquiescence may be inferred by the silence or inaction of one party who knows of the boundary line claimed by the other and fails to dispute it for a ten-year period." *Id.* Finally, "[a] party seeking to establish a boundary other than a survey line" must do so by "'clear' evidence." *Id.*

Here, we think the district court's finding was supported by substantial evidence. Given the longtime use and maintenance of the property by the Haldemans and the Lunds from 2003 onward, the owners of the Siegert parcel should have been alerted they needed to take action to dispute the use of the land. *See Albert v. Conger*, 886 N.W.2d 877, 884 (Iowa Ct. App. 2016). The property at issue in this case was not hidden from view nor remote from its owners. And the Haldemans and the Lunds did not conceal their use of the land when they openly mowed it and rode go-karts over it. While Feekin claims to have told the Haldemans where the surveyed line was when they purchased their property, he never disputed the Haldemans' *use* of the land at issue here. Nor did the Siegerts attempt to oust the Haldemans or the Lunds from their use of the disputed land until 2019. We think this inaction, coupled with the use of the land by the Haldemans and the Lunds, establishes a boundary by acquiesce contemplated by section 650.14. *See id.*

True, there was contradictory evidence on who maintained and used the disputed land. "But to the extent the testimony diverged, it was the district court's prerogative to resolve the inconsistencies." *Jaeger v. Manemann*, No.19-1022, 2020 WL 1888768, at *2 (Iowa Ct. App. Apr. 15, 2020). And we have considered the Siegerts' argument that permissive use of land cannot amount to acquiescence. But the use of the land by the Haldemans and the Lunds was not

"permissive" because neither Feekin nor the Siegerts ever authorized the use. Instead, Feekin testified that he merely *notified* the Haldemans of the surveyed line. We think this—coupled with the lack of affirmative ouster for the statutory period of years—instead demonstrates Feekin's consent to the fence line as a boundary. *See Olson v. Clark*, 109 N.W.2d 441, 444 (Iowa 1961) ("Acquiescence which will establish a boundary line is consent inferred from silence . . . it exists when a person who knows that he is entitled to impeach a transaction or enforce a right neglects to do so for such a length of time that under the circumstances the other party may fairly infer he has waived or abandoned his right.").

## IV. Conclusion

Substantial evidence supports the district court's findings. So we affirm.

**AFFIRMED.**